UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF COOPER MARINE, INC., AS THE OWNER AND OPERATOR OF THE M/V HONEST BOB, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * | CIVIL ACTION NO. 24-2778 *c/w* NO. 25-730 <br><br> JUDGE ELDON E. FALLON <br><br> MAGISTRATE JUDGE MICHAEL B. NORTH |
| * * * * * * * * | | |

**ORDER & REASONS**

Before the Court are two motions for summary judgment, one filed by Cooper Marine, Inc. ("Cooper Marine") and the other by Nucor Steel Louisiana, LLC ("Nucor"). R. Docs. 70, 72. Claimant Justin Garcia, as personal representative and independent administrator of the Estate of Gage Garcia ("Claimant") opposes both motions. R. Docs. 82, 83. Cooper Marine and Nucor filed replies. R. Docs. 91, 92. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I. BACKGROUND**

This action for exoneration from or limitation of liability arises from the tragic death of Gage Garcia ("Mr. Garcia"), an employee working aboard Cooper Marine's vessel, the M/V HONEST BOB ("Honest Bob"). R. Doc. 83-1 at 1. Mr. Garcia worked as a deckhand on the Honest Bob while it performed fleeting operations on the Mississippi River at Nucor's facility. *Id.* Mr. Garcia served with Captain Taylor Reed ("Captain Reed") and apprentice steersman/deckhand Jared Lanoux ("Lanoux") as one member of a three-person crew aboard the Honest Bob. R. Doc. 82-1 at 2; 83-1 at 1.

Just over a year ago, on October 15, 2024, and around 2:15 p.m., the Honest Bob took a barge loaded with Nucor's product (the "barge") from the Nucor dock/facility to secure it in a nearby fleeting area on the river. R. Doc. 83-1 at 3; 82-1 at 1. After arriving at the fleet, Captain Reed directed Mr. Garcia to secure the tugboat's headline to the center kevel of the barge. R. Doc. 83-1 at 3–4. Captain Reed saw Mr. Garcia step off the starboard side of the vessel and onto the barge. *Id.* The captain then

1

called over the radio twice, asking Mr. Garcia to confirm that he had secured the headline to the barge. *Id.* at 4. When he received no response over the radio, Captain Reed looked out to the starboard side of the Honest Bob and saw Mr. Garcia floating in the water. *Id.*

Mr. Garcia's fellow deckhand Lanoux was already on the barge at this time and ran over to Captain Reed after hearing his screams. *Id.* Lanoux, too, observed Mr. Garcia unresponsive in the water. *Id.* Captain Reed and Lanoux pulled Mr. Garcia out of the water and onto the barge, and then carried him onto the Honest Bob. *Id.* at 5. Mr. Garcia was already dead when his crewmates pulled him from the water. R. Doc. 82-1 at 2. Both the captain and the deckhand testified that they did not hear or see how Mr. Garcia fell into the water. R. Doc. 83-1 at 4–5.

Cooper Marine filed the instant limitation of liability action seeking exoneration from or limitation of liability in connection with this incident. R. Doc. 1. Mr. Garcia's estate timely filed an answer and claim. R. Doc. 7. Nucor filed a claim for contribution and indemnity, as well as a third-party complaint against a Cooper Marine-related entity. R. Doc. 8. Claimant later amended his answer and claim to assert a general maritime negligence cause of action against Nucor, in addition to his Jones Act negligence and unseaworthiness claims against Cooper Marine. R. Doc. 50. Claimant prays for compensatory damages, pecuniary losses including pain and suffering, wrongful death and survival damages, pre- and post-judgment interest, costs of court, and all other available relief. *Id.* at 16.

## II. PRESENT MOTIONS

Cooper Marine and Nucor now move for summary judgment on all of Claimant's legal theories. R. Docs. 70, 72. Cooper Marine contends that Claimant can present no evidence at trial to suggest that any negligence on their part caused Mr. Garcia's death. R. Doc. 72-1 at 7–14. Similarly, it argues that Claimant will not be able to show an unseaworthy condition of the Honest Bob, nor any evidence that Mr. Garcia fell due to an unseaworthy condition of the Honest Bob. *Id.*

at 14–18. Nucor separately moves for summary judgment, also submitting that Claimant will not be able to show causation between Mr. Garcia's injury and any action or inaction on Nucor's part under a general maritime negligence theory. R. Doc. 70-2 at 7–13. Cooper Marine and Nucor each request this Court limit Claimant's available damages as a matter of law to pecuniary losses and pre-death pain and suffering, as there is no evidence that Mr. Garcia had any dependents nor a spouse, and all other damages avenues are foreclosed by law. R. Doc. 72-1 at 18–25; 70-2 at 13–16.

Claimant opposes both motions. R. Docs. 82, 83. He avers that he has competent summary judgment evidence to allow all his claims against Cooper Marine to survive. First, he contends he has evidence that Cooper Marine personnel failed to inspect the barge for on-deck debris before directing Mr. Garcia to cross over onto it. R. Doc. 83 at 13–14. Moreover, he insists there is sufficient circumstantial evidence to submit to a jury suggesting that Mr. Garcia slipped on debris on the barge's deck. *Id.* at 14–15. Claimant separately argues that Captain Reed's failure to follow Cooper Marine's "buddy system" caused Mr. Garcia's fall. *Id.* at 15–16. Second, on unseaworthiness, he submits that Cooper Marine created an unseaworthy condition by failing to provide safe ingress and egress from the Honest Bob by not keeping the Honest Bob flush against the side of the barge. *Id.* at 16–17.

Claimant references the same circumstantial evidence showing that Mr. Garcia slipped in debris to argue that there is also sufficient evidence of causation to survive Nucor's summary judgment motion. R. Doc. 82. He submits photographs taken on the date of incident that purportedly demonstrate the presence of Nucor's product, direct reduced iron ("DRI") pellets, on the deck of the barge where Claimant posits that Mr. Garcia slipped. *Id.* at 5–6. It was Nucor's responsibility, submits Claimant, to wash off debris like DRI pellets from their loaded barges

3

before turning them over to Cooper Marine. *Id.* Even more, Claimant contends that these same photographs depict a shoe print in the scattered on-deck debris, and this, combined with other circumstantial evidence, is enough to show that the presence of Nucor's product on the barge deck caused Mr. Garcia's fall. *Id.* at 13–14.

Claimant responded to both motions' request for limited damages. He states in both oppositions that Mr. Garcia's estate may only recover medical and funeral expenses, as well as pre-death pain and suffering, under present law. R. Doc. 80 at 2, 17–19; 82 at 2, 15–16. Cooper Marine and Nucor each filed replies, generally arguing that Claimant's summary judgment evidence is insufficient to show causation. R. Docs. 91, 92.

### III. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c*)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### IV. DISCUSSION

Cooper Marine and Nucor each ask this Court to observe that Claimant has no evidence of causation on any of his theories of liability. Cooper Marine argues that Claimant cannot show causation on his Jones Act negligence and unseaworthiness claims. Nucor contends that Claimant has no evidence of causation on his general maritime negligence claim. The Court takes each motion and each theory in turn.

#### A. Cooper Marine's Summary Judgment Motion

Cooper Marine argues that Claimant cannot prove essential elements of both his Jones Act negligence and unseaworthiness claims. For the following reasons, Cooper Marine's arguments fail.

##### a. Jones Act Negligence

Jones Act negligence and unseaworthiness are "two separate and distinct claims." *Chisholm v. Sabine Towing & Transp. Co.*, 679 F.2d 60, 62 (5th Cir. 1982). Importantly, the causation standard is different: "[a]n unseaworthiness claim requires proximate causation," whereas "'[t]he standard of causation in a Jones Act case is not demanding.'" *Gowdy v. Marine Spill Resp. Corp.*, 925 F.3d 200, 205 (5th Cir. 2019) (secondly quoting *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008)). Indeed, courts have described the Jones Act causation standard as "featherweight." *Chisholm*, 679 F.2d at 62; *In re Cooper/T. Smith*, 929 F.2d 1073, 1076 (5th Cir. 1991).

"Although in Jones Act cases a 'jury is entitled to make permissible inferences from unexplained events,' summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case." *In re Cooper/T. Smith*, 929 F.2d at 1077 (quoting *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)). But the Fifth Circuit "of course follow[s] the Supreme Court's instruction that 'entirely

5

circumstantial' evidence can prove a Jones Act claim." *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 (1957)).

Cooper Marine's summary judgment motion does not opine on which negligent acts it could have committed. *See* R. Doc. 72-1. Instead, it argues that, regardless of the negligence theory advanced by Claimant, he will not be able to demonstrate causation because this accident was unwitnessed. *Id.* at 12–14. From Cooper Marine's perspective, Claimant can only advance speculative theories as to how Mr. Garcia ended up in the water. *Id.* at 14. This "mere conjecture," it contends, is fatal to any negligence theory Claimant could argue. *Id.* The Court disagrees. Circumstantial evidence can prove a Jones Act negligence claim. *Jones*, 936 F.3d at 323. Perhaps if Claimant lacked *any* circumstantial evidence, the Court could agree with Cooper Marine. But he does not.

As a threshold matter, Claimant advances two negligence theories: (1) Cooper Marine, through Captain Reed, had a duty to inspect third-party vessels before pulling them away from any loading docks, and that this duty was breached when the captain failed to do so; and (2) Cooper Marine's captain had a duty to follow the company's "buddy system" requiring Captain Reed to "[m]aintain visual and/or verbal contact when outside the vessel" with Mr. Garcia, his buddy, and that Captain Reed breached this duty by failing to maintain visual or verbal contact. R. Doc. 83 at 7–8; 83-10 at 2. Thus, the Court will analyze whether Claimant has submitted sufficient circumstantial evidence to survive summary judgment that either of these two alleged negligent acts caused Mr. Garcia's death.

Claimant's overarching theory of Mr. Garcia's death is that Mr. Garcia slipped on spilled DRI pellets left on the surface of the barge near the barge's center kevel. *See generally* R. Docs. 82, 83 (advancing this theory in both summary judgment oppositions). In support, Claimant

6

submits the investigation report of the St. James Parish Sheriff officer who arrived at the scene on the date of the incident, which includes pictures allegedly depicting the condition of the barge at the time of Mr. Garcia's death. R. Doc. 83-7. Claimant highlights two pictures, both of which focus on the center kevel of the barge and appears to depict this center kevel as surrounded by small pellet-looking items. 83-7 at 64, 57. Claimant avers that one image, R. Doc. 83-7 at 57, shows a "shoe print mark directly in th[e] spilled slip-hazard DRI pellet mound" left on the deck of the barge next to the center kevel. R. Doc. 83 at 6. To Claimant, this shoe print mark, along with other circumstantial evidence, presents a genuine issue of material fact as to whether the DRI pellet mound caused Mr. Garcia to slip. *Id.* And Cooper Marine can be liable for Mr. Garcia's alleged slip, Claimant presses, because Captain Reed failed to inspect the barge for on-deck trip hazards before pulling it away from the Nucor dock, and because Captain Reed failed to follow Cooper Marine's buddy system after directing Mr. Garcia to work in the DRI pellet mound by asking him to tie a rope around the kevel depicted in the pictures. *Id.* at 5–8.

The Court finds that there is sufficient circumstantial evidence of causation to satisfy the Jones Act's featherweight standard. When viewing the photographs in context with certain testimony, this satisfaction is only amplified. For example, Captain Reed's testimony creates enough evidence to allow the jury to decide whether Cooper Marine's actions or inactions contributed to Mr. Garcia's death.

Captain Reed testified that Cooper Marine trains him to inspect barges before taking them out of the Nucor slip, and that he did not recall if anyone inspected the barge the Honest Bob was towing at the time of Mr. Garcia's death. R. Doc. 73-1 at 143–44. When the Honest Bob backed the barge down to the fleet, Captain Reed "unfaced" the vessel and directed Mr. Garcia to secure a headline, meaning Mr. Garcia would step over from the Honest Bob onto the barge to tie a rope

7

from the Honest Bob onto one of the barge's kevels. *E.g.*, *id.* at 32–33, 48–49, 289. Captain Reed saw Mr. Garcia step off from the starboard side of the Honest Bob to do so, but lost sight of him because Mr. Garcia "went behind the push knee" at the front of the Honest Bob. *Id.* at 32–33, 137–138. However, Captain Reed knew that Mr. Garcia successfully secured the headline because "when [he] leaned to the left [from the wheelhouse], [he] could see the head line was put on." *Id.* at 138. The jury could use the foregoing testimony to infer that Captain Reed's actions, imputed on Cooper Marine, played any part—even the slightest—in causing Mr. Garcia's fall. *Gautreaux*, 107 F.3d at 335. Therefore, summary judgment is improper on the issue of Jones Act negligence.

### b. Unseaworthiness

"'General maritime law imposes a duty upon shipowners to provide a seaworthy vessel.'" *Luswich v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (quoting *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 74 (5th Cir. 1980)). The owner, however, is not 'obligated to furnish an accident-free ship.'" *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007) (quoting *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550 (1960)) (internal citations omitted). "'To be seaworthy, a vessel and its appurtenances must be reasonably fit for their intended uses.'" *Luswich*, 956 F.3d at 326 (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 379 (5th Cir. 2012)).

Importantly, "[u]nlike a Jones Act negligence claim, unseaworthiness does not require notice." *Ellison v. Marquette Transp. Co. Gulf-Inland, LLC*, No. 23-1849, 2024 WL 3925158, at *5 (E.D. La. Aug. 22, 2024). This is because "the seaworthiness issue is treated like a breach of warranty, rather than the narrower duty-breach inquiry for negligence." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991); *see also Johnson*, 845 F.2d at 1354 ("Liability under the doctrine of unseaworthiness does not rest upon fault or negligence."). Accordingly, the standard of

8

causation is also higher: claimants must demonstrate proximate cause, meaning that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson*, 845 F.2d at 1354.

Claimant contends that Cooper Marine breached its absolute, nondelegable duty of providing Mr. Garcia with a seaworthy vessel by failing to provide him with safe ingress and egress between the Honest Bob and the barge. R. Doc. 83 at 16–17. Cooper Marine takes the position that the Honest Bob was seaworthy on the date of accident because it had a fully manned crew who were working within the appropriate 12-hour window at the time of the accident, had no reported mechanical issues, and had its equipment checked by Captain Reed in the morning before the Honest Bob began performing its fleeting work. R. Doc. 72-1 at 16–17. Moreover, it contends that Claimant was last seen aboard the barge, and thus there is no evidence that an unseaworthy condition of the Honest Bob caused Mr. Garcia's fall. *Id.* at 17–18.

As explained by a court in this district, "[o]nly if a vessel fails to provide a safe, appropriate means of ingress and egress is ingress and egress an unseaworthiness concept." *Howard v. Offshore Liftboats, LLC*, No. 13-4811, 2016 WL 3536799, at *3 (E.D. La. June 28, 2016). But if a vessel *has* a means of ingress and egress, then the adequacy/safeness of it is a negligence concept. *Id.* Assuming here that the Claimants press a theory that the Honest Bob entirely lacks any means of ingress and egress with the barges it tows, *see* R. Doc. 83 at 16, then the Court finds that there is sufficient evidence to support a theory, and allow the jury to decide, if Cooper Marine provided an unseaworthy vessel.

Claimant submits that Captain Reed's testimony creates disputed material facts of an absence of safe ingress and egress. R. Doc. 83 at 17. He testified that the Honest Bob was flush up

9

against the side of the barge when Mr. Garcia crossed over onto the barge, so at the time of his initial cross, Captain Reed observed that there was no gap in between the barge and the Honest Bob for Mr. Garcia to fall into. R. Doc. 73-1 at 138–39. Captain Reed further stated that it was his duty to maintain contact with the barge during this process, and that he did this through throttle and steering. *Id.* at 139–40. Notably, though, Dr. DeFatta, the coroner who performed Mr. Garcia's autopsy, testified that Mr. Garcia died as a result of being crushed between two vessels. R. Doc. 73-3 at 7–9, 52. Accordingly, Claimant advances the theory that "Captain Reed failed to maintain flush contact between the vessels, and thus allowed a water-gap between the towboat and the barge to form." R. Doc. 83 at 17. To Claimant, Cooper Marine completely failed to provide a safe means of ingress and egress by not providing any other method beyond maintaining flush contact between the Honest Bob and barges, causing Cooper Marine to breach its duty to provide a seaworthy vessel, and proximately causing Mr. Garcia's death.

      The Court finds that the foregoing creates a genuine dispute of material fact as to whether Cooper Marine provided a safe means of ingress and egress between the Honest Bob and the barge. *See Stewart v. Moncla Marine Ops., LLC*, No. 17-1260, 2023 WL 1806920, at *4 (W.D. La. Feb. 6, 2023) (finding plaintiff's unseaworthiness claims survived summary judgment with evidence that, despite the presence of gangway, plaintiff was not trained to deploy it, creating sufficient disputed facts as to unseaworthiness of that vessel's egress); *Badeaux v. Eymard Bros. Towing Co.*, No. 19-13427, 2021 WL 55644599, at *8 (E.D. La. Nov. 29, 2021) (concluding in its findings of facts that "[t]his accident would not have happened as it did if [the vessel owner] had provided a reasonably safe means of ingress. The Court therefore finds that plaintiff prevails on his claim of unseaworthinesss."). Whether or not Cooper Marine failed to fulfill its duty to provide a safe

10

means of ingress and egress is a question of fact for the jury. *See Arceneaux v. Ingram Barge Co.*, No. 94-2505, 1995 WL 527635, at *2 (E.D. La. Sept. 5, 1995).

### B. Nucor's Summary Judgment Motion

Nucor argues that Claimant cannot prove essential elements of his general maritime negligence claims against it. For the following reasons, Nucor's arguments fail.

#### a. General Maritime Negligence

Under general maritime law, a party asserting negligence must show the following to succeed: (1) duty; (2) breach of duty; (3) proximate cause; and (4) actual damage. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)). To succeed on this theory, the claimant must show that the negligence "is the 'legal cause' of the claimant's injuries, which is something more than 'but for' causation—the negligence must be a substantial factor in causing the injuries." *Id.* at 213–14 (quoting *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992)) (cleaned up). "[F]ault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract." *Bd. of Comm'rs of Port of New Orleans v. M/V Farmsum*, 574 F.2d 289, 297 (5th Cir. 1978). The negligent act or omission must be "a substantial and material factor" in causing the harm. *Am. River Transp. Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998).

Nucor argues that Claimant has no material facts that could demonstrate that Mr. Garcia slipped in DRI pellets on the barge, so Claimant has no evidence of causation. R. Doc. 70-2 at 10–13. It submits that the "best [evidence] Garcia will be able to show is that some [DRI] pellets were found in some locations on the barge" and that any "evidence" purporting to show that Mr. Garcia slipped in DRI pellets is pure speculation. *Id.* at 12. Claimant, on the other hand, contends that he

has evidence that Nucor had a duty to inspect and clean the barge, and that the images of the DRI pellets on the barge confirm that it breached this duty. R. Doc. 82 at 5–6. Then, he once again submits the photographs depicting an alleged footprint/slip mark in the DRI pellet mound next to the kevel on which Captain Reed directed Mr. Garcia to tie the headline. *Id.* at 6, 8–9. Moreover, Claimant cites to deposition testimony of both Captain Reed and deckhand Lanoux, who each testified that they did not remember walking on the DRI pellets on the barge—to Claimant, this shows that there is no testimony directly evidencing that the slip mark present in the picture could be attributed to either Captain Reed or Lanoux. *Id.* at 14 (citing R. Doc. 83-5 at 9; 83-11 at 4). Claimant also explains that Captain Reed found Mr. Garcia floating in the water not far from the pellet-encompassed kevel. *Id.* at 10. This is demonstrated through not only Captain Reed's and Lanoux's testimony, but also more photographs which purportedly depict blood and brain matter on the deck and hull of the barge not far from the center kevel. *Id.* at 10–11.

The Court finds that Claimant carried his burden of demonstrating, through competent summary judgment evidence, that there are issues of material fact that must be resolved by a jury. The photographs, which depict a shoe print that arguably looks like a slip based on the marks left in the deck's debris, combined with the deposition testimony that neither Captain Reed nor Lanoux remember stepping on DRI pellets when they walked on the barge, is sufficient circumstantial evidence to allow a jury to conclude that Nucor's alleged failure to clean the DRI pellets off the barge before it was taken by the Honest Bob proximately caused Mr. Garcia's death. *Am. River Transp. Co.*, 148 F.3d at 450.

Additionally, two cases cited by Nucor, *Jones v. United States* and *Adriatic Marine, LLC v. Harrington*, are each distinguishable: in each case, the injured party was alive and able to testify, and each reported that they did not see the substance upon which they asserted they slipped in the

area in which they claim to have slipped. *See Jones*, 936 F.3d at 322–23 (describing that grease being present *elsewhere* on a ship's deck is too circumstantial to support the plaintiff's contention that he slipped in grease, especially because plaintiff testified that he "never saw grease in the spot where he slipped, even when he later investigated his fall"); *Adriatic Marine, LLC v. Harrington*, 446 F. Supp. 3d 126, 136 (E.D. La. Mar. 3, 2020) (explaining that seaman testified that "there was nothing on the pipe that may have caused him to slip" and that "he does not know if there was any oil on his shoes because he did not look at his shoes before stepping on the pipe" so his contention that he slipped on oil was unsupported). Accordingly, the Court will deny Nucor's motion for summary judgment as to the general maritime negligence claims.

### C. Damages

Cooper Marine and Nucor request this Court limit Claimant's available damages as a matter of law to pecuniary losses and pre-death pain and suffering. R. Doc. 72-1 at 18–25; 70-2 at 13–16. They submit that there is no evidence that Mr. Garcia had a spouse nor any other dependents, and that all other damages avenues are foreclosed by law. R. Doc. 72-1 at 18–25; 70-2 at 13–16. Claimant states in both oppositions that Mr. Garcia's estate may only recover medical and funeral expenses, as well as pre-death pain and suffering, under present law. R. Doc. 80 at 2, 17–19; 82 at 2, 15–16. Therefore, the Court will limit the evidence of damages at trial to evidence of Mr. Garcia's medical expenses, funeral expenses, and pre-death pain and suffering. *See also McBride v. Estis Well Serv., LLC*, 768 F.3d 382, 391 (5th Cir. 2014) (reaffirming that "[o]n the subject of recoverable damages in a wrongful death case under the Jones Act and the general maritime law, [the Supreme Court] has limited the survivor's recovery to pecuniary losses."); *Miles v. Apex Marine Corp.*, 498 U.S. 19, 22–23 (1990) (affirming jury award for decedent seaman's pain and suffering); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 142 (5th Cir.

1986) (noting that "[t]he only remaining recoverable item of damages is for the pain and suffering [the decedent] suffered before his death").

## V. CONCLUSION

Considering the foregoing;

**IT IS ORDERED** that the motions for summary judgment submitted by Cooper Marine and Nucor, R. Docs. 70 & 72, are **DENIED**.

New Orleans, Louisiana, this 3rd day of November, 2025.

THE HONORABLE ELDON E. FALLON